In re MARKS.

(District Court, E. D. Pennsylvania. February 21, 1910.)

No. 2,152.

1. BANKRUPTCY (§ 136*)—WITHHOLDING ASSETS—CONTEMPT—PUNISHMENT—DEFENSES.

A bankrupt should not be committed for contempt for failure to comply with an order requiring him to turn over money to his trustee alleged to have been withheld, where the court is convinced that the bankrupt is without physical ability to comply.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 136.*]

2. BANKRUPTCY (§ 136*)—WITHHOLDING ASSETS—CONTEMPT—PUNISHMENT—HEARING.

Where an order, finding that a bankrupt had retained from his trustee a certain sum of money and directing the payment thereof, had been previously affirmed by the District Court and remained unappealed from, it would not be reviewed by such court in a proceeding to punish the bankrupt for contempt in failing to comply therewith.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 136.*]

3. BANKRUPTCY (§ 136*)—WITHHOLDING ASSETS—CONTEMPT—PUNISHMENT—EVIDENCE.

In a proceeding to punish a bankrupt for contempt in failing to comply with an order requiring him to turn over withheld assets to his trustee, evidence held to require a finding that the bankrupt had not present ability to comply, and was not therefore subject to incarceration for contempt.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 136.*]

In the matter of the bankruptcy of Jacob M. Marks. On rule to commit bankrupt for contempt. Rule discharged.

See, also, 171 Fed. 281.

George Wentworth Carr, for trustee.

Joseph L. Greenwald, for bankrupt.

J. B. McPHERSON, District Judge. In September, 1906, after a prolonged and very careful investigation, the referee found as a fact that in January, 1905, the bankrupt had about $8,000 belonging to the estate in his possession or under his control, and thereupon directed him to pay that sum to the trustee within 20 days. An application to revoke the order followed, and in February, 1908, the referee first reduced the amount to $3,000 in round figures, and then revoked the order altogether. On June 24, 1909, the District Court affirmed the reduction, but set aside the revocation; and, as no review of this action was asked for, the starting point of the present inquiry is the order of affirmance.

For the purpose of enforcing it the trustee obtained a rule requiring the bankrupt to show cause why he should not be committed for

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

contempt in failing to pay. He answered the rule, and a hearing was had before me in open court on December 29 and 30, 1909, when such testimony was presented as either party desired to offer. The question for decision is whether the bankrupt should be committed to prison for failure to comply with the order of June 24th; and upon this question the brief of the trustee's counsel concedes that:

"All the cases are practically harmonious in the declaration that, if the court is convinced that the bankrupt is unable to comply with the order, he should not be committed for contempt. Without the physical ability to comply, there can be no contempt."

Unquestionably that is the rule in this circuit. The Court of Appeals approved it in Trust Co. v. Wallis, 11 Am. Bank. R. 360, 126 Fed. 464, 61 C. C. A. 342—and there are decisions elsewhere to the same effect. It will be observed that the present case differs from those which involved the preliminary question whether the referee or the District Court should make an order on the bankrupt to pay money or deliver goods. Here that point has been passed. It has been finally decided that in February, 1908, the bankrupt had in his possession or under his control the sum of $3,000 belonging to his estate in bankruptcy; and it only remains to inquire whether he is now able to pay. In this proceeding the court will not re-examine the question whether the order should ever have been made—either at all, or in the particular amount fixed by the referee. The trustee has therefore an unimpeachable right to the money specified in the order, and presumptively the bankrupt is able to pay it; but the admission must nevertheless be made that the presumption may not correspond with the fact, and that in reality the bankrupt cannot comply with the order. Unless he has the physical ability to comply, he should not be committed for contempt. In practical effect, although perhaps not in legal contemplation, this would revive the abolished penalty of imprisonment for debt. If he cannot pay, and if this inability is the result of his own criminal act, he may, of course, be punished by the criminal law, although no civil remedy may be available in the situation. Even if he has misappropriated the money, the court has not the power to imprison him in a proceeding for contempt; for this would deprive him of his constitutional right to submit the charge of misappropriation to a jury in the proper criminal court, and would deprive him, also, of the inseparable right to be exempt from imprisonment for such an offense until he shall have been lawfully convicted. And it is also true that he cannot be imprisoned in a proceeding for contempt, if for any other reason he cannot produce the money; for the court cannot imprison as a punishment. It can only imprison to compel obedience to its order. But with an order to pay in force against him, and with the need to overcome the presumption of his ability to comply, it will no doubt happen at times that a bankrupt may fail to meet the burden of proof, and may be obliged to go to jail until he satisfies the court that he was telling the truth when he pleaded poverty. Certainly his bare denial of present ability to pay may be properly regarded with suspicion, and he may be required to satisfy the court with clearness that obedience to the order is wholly beyond his power. Such situations must be dealt with as they arise.

No general rule can be laid down, and each case must stand upon its own facts. A decision upon the general subject has been recently reported from the Second Circuit. Re Stavrahn (C. C. A.) 174 Fed. 330.

In the present case I cannot escape from the conclusion that the bankrupt is now unable to comply with the order. The evidence satisfies me that he is in straitened circumstances, a merchant in a very small way, practically living from hand to mouth, and barely able to make a scanty livelihood for himself and his household. In my opinion, to commit him to prison would not obtain a dollar for his creditors, but would simply result in destroying what little business he has managed to acquire, and would probably reduce those dependent upon him to penury. It is already clear to me that the court would be obliged to release him after an unproductive confinement of several weeks or months, and I do not think I have the right to imprison him at all, unless there is at least a doubt concerning his ability to comply with the order. In a doubtful case, I think it is clear that the court has the right, and may be under the duty, to resort to imprisonment in order to test the sincerity of the bankrupt's denial.

The rule is discharged.