## In re GOLDMAN.

### GOLDMAN v. SILVERMAN.
### No. 2662.

Circuit Court of Appeals, First Circuit.
Dec. 17, 1932.

Harry Shapiro, of Boston, Mass. (Alexander G. Gould, of Boston, Mass., on the brief), for appellant.

Harold Horvitz, of Boston, Mass. (Abraham S. Guterman and Guterman & Guterman, all of Boston, Mass., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

The appellant was adjudged a bankrupt on an involuntary petition filed April 1, 1931. In the following August the appellee, who had been duly elected trustee in bankruptcy, filed a petition with the referee to whom the

case had been referred, setting forth that he had examined the bankrupt and made investigations into his affairs, and as a result he believed that the bankrupt had in his possession or under his control the following property in merchandise of the kind in which he dealt (which was braids and trimmings), amounting to approximately $10,000, or the proceeds from the sale of such merchandise.

After a hearing before the referee, the referee made the following finding: "I am unable to believe that the bankrupt has not now in his possession a substantial amount of assets which should be turned over to his trustee in bankruptcy. * * * In my opinion the evidence produced by the trustee in bankruptcy was clear and convincing that the bankrupt is concealing assets.

"It is therefore ordered that the bankrupt forthwith pay over to the trustee in bankruptcy the sum of $5,029.28."

On a petition for review of the order of the referee and on a motion in the bankruptcy court to recommit the referee's certificate, the bankruptcy court denied the motion to recommit the referee's certificate and affirmed the order of the referee that the bankrupt forthwith pay to the trustee in bankruptcy the sum of $5,029.28.

From this order of the bankruptcy court, the bankrupt filed both an appeal under section 24a of the Bankruptcy Act, 11 USCA § 47 (a), and a petition for a leave to appeal under section 24b of the act, 11 USCA § 47 (b). Counsel for the bankrupt admits that such orders are "proceedings in bankruptcy," and can only be reviewed as to errors of law on a petition for leave to appeal under section 24b of the Bankruptcy Act. The appeal must therefore be dismissed. White v. Barnard (C. C. A.) 29 F.(2d) 510; In re Miller & Harbaugh (C. C. A.) 56 F.(2d) 141; Kirsner v. Taliaferro (C. C. A.) 202 F. 51; Taylor, Trustee, et al. v. Voss, Trustee, 271 U. S. 176, 46 S. Ct. 461, 70 L. Ed. 889; volume 1, Collier on Bankruptcy, p. 841.

As the question raised is one of importance in the administration of bankrupt estates, the petition for leave to appeal is granted.

The issue is whether as a matter of law the bankruptcy court erred in affirming an order of a referee in bankruptcy that the bankrupt pay over to his trustee a definite sum in cash upon a general finding that the bankrupt has in his possession or under his control assets without specifying the nature of the assets.

Since the referee refused on petition of the bankrupt to transmit to the bankruptcy court a transcript of the evidence taken before him on the ground that his certificate presented the entire case, and it therefore does not appear what explanation the bankrupt may have made of the apparent discrepancy, except as may be inferred from the certificate, this court is unable to say, as a matter of law, that there was no evidence that the bankrupt concealed assets of some kind which should have been turned over to the trustee.

According to the referee's certificate, the evidence on which he based his order consisted of a report to the commercial rating house of R. G. Dun & Co. as of January 1, 1930, in which the bankrupt reported net assets of $72,366.60, and the bankrupt's books and his failure to satisfactorily account for the apparent deficiency which the referee found in his assets on April 1, 1931. The referee found that the bankrupt had purchased, prior to an assignment for the benefit of his creditors on March 19, 1931, merchandise to the amount of $49,299.57, and had also borrowed $4,000, or a total to be accounted for of $125,666.17. Against this the referee found that the bankrupt reported in his bankruptcy schedules assets amounting to $32,328.16, and since January 30, 1930, had paid out for merchandise and business and personal expenses, and suffered losses on investments and bad debts, a total of $120,639.89.

From this the referee deduced that the bankrupt was concealing assets in some form, at least, to the amount of the difference between the above totals, and ordered him to pay over to the trustee the sum of $5,029.28.

A "turnover order," to be effective, must be followed by commitment for contempt, if disobeyed. While the bankruptcy courts are invested with this power, and it is essential to the proper administration of bankrupt estates as against contumacious debtors, it should be exercised with caution. A concealment of assets must first be shown by clear and convincing evidence. Oriel et al. v. Russell, Trustee, 278 U. S. 358, 49 S. Ct. 173, 73 L. Ed. 419; and, on contempt proceedings, if it does not appear from the referee's findings and order that the bankrupt could comply therewith, or if it be shown that he is unable to comply, due to a change in the situation since the order was given, no commitment should follow, but a fine may be imposed if the changed situation is due

to the bankrupt's intent to avoid the order, In re Tabak et al. (D. C.) 34 F.(2d) 209, 210; In re Paul (D. C.) 14 F.(2d) 703, 704; In re Holden (C. C. A.) 203 F. 229; In re Elias (D. C.) 240 F. 448; Epstein v. Steinfeld (C. C. A.) 210 F. 236; Kirsner v. Taliaferro, supra (C. C. A.) 202 F. 51, 59, 60; Oriel et al. v. Russell, Trustee, supra.

While the referee found concealment of assets, he does not find what kind of assets they were, whether merchandise, real estate, bills receivable, or money, or assets in some other form. Unless it can be held from the fact that he ordered the bankrupt to pay over to the trustee the amount of money representing the deficiency, a presumption arises that he found that the bankrupt was concealing money, we think there was error in law in the decree of the bankruptcy court affirming the order of the referee.

The District and Circuit Courts of Appeal are not in entire accord as to the form which the turnover order may take; but the cases in which cash is ordered to be paid are cases where the referee has found that the bankrupt had cash in his possession which he has not accounted for. Reardon v. Pensoneau (C. C. A.) 18 F.(2d) 244; In re Weber Co. (C. C. A.) 200 F. 404; Dittmar v. Michelson (C. C. A.) 281 F. 116; Sheinman v. Chalmers (C. C. A.) 33 F.(2d) 902; In re Rosen (C. C. A.) 13 F.(2d) 94; Hirsch v. Schilling (C. C. A.) 28 F.(2d) 171; Clark v. Milens (C. C. A.) 28 F.(2d) 457.

In some instances where the bankrupt has been found to have concealed merchandise of a certain value, he has been ordered to turn it over, but has been given the option of paying over its value in cash. In re H. Magen Co., Inc. (C. C. A.) 10 F.(2d) 91; Kirsner v. Taliaferro, supra. But see In re Sax (D. C.) 141 F. 223; Toplitz v. Walser (C. C. A.) 27 F.(2d) 196; In re Elias, supra (D. C.) 240 F. 448, 460. We find no case where the referee has merely made a general finding that the bankrupt has concealed assets and has ordered the bankrupt to pay over money.

██ To order a payment in money on a general finding of a concealment of assets, especially on the evidence set forth in the referee's certificate in this case, would be contrary to the theory of such proceedings, which are of a summary nature, and are to be invoked only for the purpose of bringing within the reach and control of the bankruptcy court property found to be in the possession of the bankrupt and by him unlawfully with-

held, and not for the purpose of punishing the bankrupt for a fraud, or to collect a sum as money owed. The command of the court to the bankrupt should be to surrender the property found to have been concealed. In such cases the order to deliver must be based upon clear and convincing proof that the party charged has possession and control of property or the proceeds thereof, which are a part of his estate. The order operates in personam, by requiring him to do the thing commanded upon pain of punishment by imprisonment for refusal. Such an order is erroneous as matter of law, unless it plainly and affirmatively appears that the bankrupt has the power to comply with its requirements. Samel et al. v. Dodd (C. C. A.) 142 F. 68.

██ It is not, therefore, within the power of the bankruptcy court in such a proceeding to render judgment for the value of property ascertained to be in the possession of, and concealed by, a bankrupt, and commit him for contempt upon his refusal to pay over its value. Such procedure has been correctly said to approach dangerously near the line, if it did not overstep it, of imprisonment for debt. While bankruptcy courts are invested with the power to require bankrupts to surrender their property and to enforce obedience to the order by attachment for contempt, a power so drastic should never be exercised except in a plain case, and always with due regard to the constitutional rights of the citizen. In re Miller & Harbaugh (C. C. A.) 54 F.(2d) 612; Samel et al. v. Dodd, supra.

The only case that has been called to our attention in any way supporting the order of the referee in this case is that of In re Baum (C. C. A.) 169 F. 410, 411, where the court, on contempt proceedings on an order of the bankruptcy court to turn over cash, held that it should be presumed that the assets concealed consisted of cash. It appears, however, in that case, that the finding of the bankruptcy court was that the bankrupt had concealed assets and has "failed to turn over to the trustee *the sum of $16,461.62.*" (Italics supplied.) Here is a distinct finding that the concealment of the assets was in failing to turn over the sum of $16,461.62. No such finding appears in the case at bar as a basis for a presumption that the referee must have found that the assets concealed consisted of money. In a proceeding so drastic as this, we think that, on the findings made in this case, no such presumption can be indulged.

While the method used by the referee in this case in arriving at his conclusion that the bankrupt had concealed assets may be open to question as to its conclusiveness, the referee found that the bankrupt's explanations were unsatisfactory. While, on a petition for leave to appeal, this court must accept the findings of the referee as affirmed by the bankruptcy court unless it appears there was no substantial evidence to support it, to approve a ruling that, because a bankrupt fails satisfactorily to account for an apparent deficiency in assets, he must make good the deficiency by a payment of money without a finding that he has concealed the proceeds of a sale of his assets, or has in his possession or control the money as a part of his estate, would be going beyond the scope of such proceedings and take on the character of the collection of a debt or a punishment for his fraud.

In concurring in the opinion in Samel et al. v. Dodd, supra (C. C. A.) 142 F. 68, at page 73, Judge Shelby said: "To imprison one for not doing what he cannot do is inconsistent with the principles of individual liberty. There is no statute or law which confers such authority. Imprisonment under such circumstances for failure to pay money may force the friends of the prisoner to raise and pay the required sum, but such imprisonment is unwarranted by law in a jurisdiction where imprisonment for debt is forbidden. Where the prisoner has the power to comply with the order, having the money or thing in question in his possession, he may, of course, be punished for his failure to surrender it, without conflict with any rule of law against imprisonment for debt. Mueller v. Nugent, 184 U. S. 1, 22 S. Ct. 269, 46 L. Ed. 405."

The objection has been frequently raised in this class of cases that to require definite findings by the referee as to the nature of the property concealed may result in converting the bankruptcy law into a shield for the protection of dishonest bankrupts. But the act itself, section 29 (11 USCA § 52), provides other means for the punishment of dishonest bankrupts, and also denies them the benefit of the act. In re Miller & Harbaugh, supra. The power of the bankruptcy court in such cases should not be invoked to authorize imprisonment for debt, nor impose unreasonable hardships on bankrupts who, by reason of faulty bookkeeping or incompetency, may not be able satisfactorily to account over a considerable period for a deficiency between inventories, purchases and loans, and bankruptcy schedules plus disbursements and losses. Kirsner v. Taliaferro, supra. These proceedings followed by commitment are both summary and drastic, and should be based on clear and definite findings by the referee and bankruptcy court as to what the turnover order requires of the bankrupt.

We think the findings of the referee in this case are not sufficiently definite on which to base contempt procedings in case the bankrupt fails to comply, inasmuch as there is no finding that he has concealed money or the proceeds of any sale of his assets, or has any money in his possession or under his control that belongs to his estate. In re Redbord (C. C. A.) 3 F.(2d) 793. To compel him to pay over money, unless it was a part of his estate, would amount to imposing a punishment for his fraud, which the court of bankruptcy cannot do.

Even though the bankrupt might have merchandise in his possession or under his control that belonged to the trustee at the time his petition was filed, he might not at the time the turnover order was issued have the proceeds of the sale of such merchandise or in case of contempt proceedings have its equivalent in money, and should not be committed for failing to do what he could not do. In re Elias, supra; In re Holden, supra; Louisville Trust Co. v. Comingor, 184 U. S. 18, 23, 22 S. Ct. 293, 46 L. Ed. 413. It is essential, therefore, that a referee's findings should be more specific than those in this case to warrant the turnover order which was issued.

We do not hold that a bankrupt, on a clear showing that he has in his possession or control and has concealed either merchandise or the proceeds from the sale thereof, may not be ordered to turn over the proceeds in money, In re Miller & Harbaugh, supra; In re Cohan (C. C. A.) 41 F.(2d) 632; but, to warrant an order to turn over money, it should appear that the money ordered to be turned over is a part of the bankrupt's estate, and was in his possession or under his control on the date of the petition in bankruptcy, or that he has converted concealed assets into money since the date of the petition which he had in his possession or control when the turnover order was issued. To affirm the order of the bankruptcy court in this case would establish the right of a referee to order a bankrupt to pay over to the trustee money without a finding that it is assets which the bankrupt has concealed, or the proceeds of concealed assets. We think the case should be remanded for recommit-

ment to the referee to make a further finding in these respects.

The appeal under section 24a is dismissed. The appeal under section 24b is granted. The order of the District Court, the basis of the latter appeal, is reversed, and the case is remanded to that court, with directions to recommit the same to the referee for further proceedings not inconsistent with this opinion. No costs.

MORTON, Circuit Judge, is of opinion that, when it clearly appears that the bankrupt is concealing either money, or goods, or the proceeds of goods, which were fraudulently abstracted from the estate and constitute part of it, a turnover order may properly be entered against the bankrupt although the evidence does not clearly show in which of the protean forms which property takes it is at the moment held by the bankrupt. He thinks that this view is supported by Oriel v. Russell (Prela v. Hubshman, Trustee), 278 U. S. 358, 49 S. Ct. 173, 73 L. Ed. 419, when considered in the light of the record on which that case was decided. He also thinks that the referee's findings were sufficiently specific even under the rule laid down in the majority opinion.