### In re LESSER et al.

(Circuit Court of Appeals, Second Circuit. February 25, 1902.)

No. 124.

BANKRUPTS—DISCHARGE—CONCEALMENT OF ASSETS.

On an application by a bankrupt firm for its discharge, it appeared that the partner having charge of its financial affairs made a statement to a commercial agency on January 10th, showing a surplus of $153,000; that at the time of the failure in October the surplus had been used up and debts incurred to over $230,000, making an apparent loss for eight months of $383,000. Testimony was offered by the bankrupts accounting for the loss of all but about $100,000 of this sum. The partner in question admitted making the statement to the commercial agency, but stated that "the bookkeeper gave it to him, and he thought it was true"; that he did not know "whether as a fact it was $150,000 or not," because "the bookkeeper gave him the figures," etc. *Held* insufficient to show that the $100,000, not accounted for, ever existed, and it was error to refuse the bankrupt's discharge on the ground that such sum was concealed.

Appeal from the District Court of the United States for the Southern District of New York.

For opinion below, see 108 Fed. 205.

Alexander Blumenstiel, for appellants.

Otto T. Hess, for respondents.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The specifications in opposition to the discharge of the bankrupts were 28 in number, some of them duplicating each other, and several presenting different phases of the same question. Except as to such as deal with an alleged concealment of $100,000, and the taking of a false oath as to the same, the full and careful report of the commissioner, to whom the issues raised by the specifications were referred, sufficiently disposes of these specifications adversely to the objectors. It will be sufficient to discuss the alleged concealment, as to the effect of which the commissioner and the district judge differed.

The firm consisted of three brothers, Tobias, Israel, and Simon, and up to 1896 had been engaged in business in New York City as manufacturers of clothing. On October 2, 1896, the firm failed, confessed judgment in favor of certain creditors, assigned certain book accounts to others, and secured the appointment by the state court of a receiver of the remaining assets. Proceedings were instituted by some of the creditors to set aside the receivership; such application was denied, but the court appointed an additional receiver. Since that time said receivers have been acting as such, and their appointment remains unrevoked and in full force, except that in a judgment creditors' action brought by one Metcalf and some others a final judg-

ment has been entered setting aside the transfers and the lien created by the appointment of the receivers as to such creditors, so as to enable them to obtain a priority of payment out of the firm assets. In May, 1899, the firm filed a voluntary petition in bankruptcy, were adjudicated on the same day, and trustee appointed June 7, 1899.

The referee finds that on January 10, 1896, Tobias Lesser, who had charge of the financial affairs of the firm, made a statement to Dun's Commercial Agency showing a surplus of $153,858.24 (a similar statement made the year before showed a surplus of $145,739.18); that at the time of the failure, however, in October, 1896, this surplus of $153,858.24, which was stated to exist in January, was entirely used up, and in addition an indebtedness for money loaned and merchandise purchased had been incurred, amounting to over $230,000, showing a loss for eight months of $383,000. Testimony was offered by the bankrupts to show in what ways heavy losses had been incurred during that period, but this testimony accounted only for some $285,-000. The commissioner, therefore, reported that in his opinion "there has been a disappearance of assets amounting to at least the sum of $100,000, which is entirely unexplained, and consequently the bankrupts must be presumed to have the same in their possession or under their control." The commissioner, however, reached the conclusion that there was no concealment by the bankrupts from their trustee of any of the property belonging to their estate in bankruptcy (section 29b [1]), because the whole title to all the bankrupts' property owned by them in October, 1896, passed to the receivers in the state court action. He held that:

"The bankrupts at that time parted with the title to all their property, and, so far as they are concerned, they cannot recover it. The receivership still remains, it has never been set aside, and all the property of the bankrupt that existed in October, 1896, whether then or since reduced to possession by the receiver, belongs to the receivers for the purposes for which they were appointed, and, even if property should now be discovered, it would, in my opinion, belong to the receivers. If that be so, there has been no concealment from the trustee in bankruptcy. In the schedules this receivership was fully set forth, and all the necessary information given. There was no concealment of the fact of the receivership, and a general statement was made of the property in their hands. The bankrupts have withheld or concealed nothing from their trustee in bankruptcy for the reason that they had nothing to withhold, the title to all that they had in October, 1896, having passed to the receiver."

The district judge held that the testimony seemed to justify the finding as to an actual disappearance of $100,000, but further held that the proposition enunciated in the above-quoted paragraph is "a technicality which ought not to shield the bankrupts from the consequences of their fraudulent acts, or to defeat the intention of the bankrupt law"; and that, "after a trustee has been appointed in bankruptcy proceedings, a concealment of assets, which have not been turned over to a previous receiver, is equally a concealment from creditors, the actual beneficiaries, whether through a receiver or through a trustee."

We incline to the opinion expressed by the commissioner, in view of the plain language of the act defining the offense (section 29b [1]); but it is not necessary to enter into any discussion of that point, be-

cause examination of the record has satisfied us that the $100,000 is mythical, it never disappeared because it never existed, and never having existed it has never been concealed. That Tobias Lesser stated to the agent of Dun's Commercial Agency that the firm's surplus in January, 1896, was $153,858.24, is abundantly proved, but proof that the statement was made is not proof that it was correct. When subsequent investigation shows that $100,000 of the $153,858 is not to be found, the most natural conclusion is that the statement was false as to the amount of surplus. It cannot be assumed, in the absence of any testimony to that effect, that the statement was truthful, and the surplus actually as large as Tobias Lesser then represented it to be. And there is no testimony at all that the surplus in January, 1896, was actually $153,000. Tobias Lesser was examined at length as to the statement he made to Dun. He didn't dispute that he gave Dun a statement, nor that the statement testified to by the agent was the statement he made; but, as to the accuracy of the statement, the most he could be got to say was that "the bookkeeper gave it to him, and he thought it was true"; that "as far as he knew it was true"; that "it must have been true at the time he gave it"; that he "does not know how much surplus they had," nor "whether as a fact it was $150,000 or not," because "the bookkeeper gave him the figures," which he "didn't compare with the books." The record is so barren of competent evidence that the alleged concealed $100,000 ever existed that, in our opinion, the commissioner was clearly in error in finding that the "bankrupts must be presumed to have the same in their possession or under their control."

A second specification, which was sustained by the district court, that the bankrupts made a false oath in verifying their schedules, depends also for support on the existence of this alleged $100,000, and therefore need not be further considered.

The decree of the district court is reversed, and discharge ordered.