## In re SHELLEY.

(District Court, S. D. California, S. D. September 21, 1925.)

No. 6689.

Bankruptcy ⬅➡136(2)—Referee's order requiring bankrupt to turn over concealed assets held final, and not reviewable on contempt proceedings.

In bankruptcy proceedings, referee's order requiring bankrupt to turn over concealed assets, which order has not been reviewed, as required by Bankruptcy Act, § 2 (Comp. St. § 9586), General Order No. 27, and rule 84 of the United States District Court, is final, and, on proceedings against bankrupt for contempt for failure to obey such order, District Court cannot review facts on which such order was based.

In Bankruptcy. In the matter of George Shelley, bankrupt. Contempt proceedings against bankrupt and others for failure to obey order of referee requiring them to turn over certain funds to trustee in bankruptcy. Committal for contempt issued.

W. T. Craig, of Los Angeles, Cal. (John E. Dalton, of Los Angeles, Cal., of counsel), for trustee.

Arthur F. H. Wright, of San Diego, Cal., for bankrupt.

HENNING, District Judge. On the 20th day of October, 1924, George Shelley signed a petition praying that he might be adjudged a bankrupt, and filed the same on October 21, 1924, and on the same day by an order of this court was adjudged a bankrupt. The matter was referred to a referee at San Diego, and a receiver for the business of said George Shelley was appointed in due course. The receiver was later appointed trustee of the estate. On the 8th day of December, 1924, the trustee filed a petition for an order to show cause against George Shelley, Ben Shelley, and Abe Shelley, commanding them to appear and show cause why an order should not be made decreeing that the persons named have in their possession assets of the estate to the value of $82,328.60, and requiring them to turn same over to the trustee, and on the same day the referee made such an order. The matter was heard before the referee on the 16th day of December, 1924, and the 2d day of February, 1925, and the 10th day of February, 1925, and was then submitted to the referee for determination. The referee also took in consideration the testimony of George Shelley, given at the first meeting of creditors and adjournments thereof. Arguments of counsel for the parties also were heard. On the 24th day of February, 1925, the referee filed his findings of fact and conclusions of law, and ordered that George Shelley, Ben Shelley, and Abe Shelley, all or either of them, do within 10 days from the date of service of the order pay to the trustee of the estate the sum of $50,000.

It appears from the record that George Shelley was the owner of a department store at San Diego, Cal., and that Ben Shelley and Abe Shelley are sons of George Shelley, and that the three jointly managed the business. The referee recites in great detail the method of operation of the store by the three Shelleys and the division of labor between them. It appears that cash registers were used in making sales, and that the three Shelleys between them handled the cash and had the combination to the safe, and that the National Cash Register system of bookkeeping was employed; that under this system certain numbered accounts are kept, which are controlled by labeled keys of the machine; that by the proper manipulation of

the machine each individual transaction of each account is shown, and also the daily perpetual totals of each account. Based upon the records of this system of bookkeeping, the referee found that there was, at the time of bankruptcy, a shortage of merchandise amounting to $82,328.60, and that the bankrupt failed to enter in his record the cash sales of merchandise which had cost him the said sum. He further finds that all of this merchandise was sold at not less than cost.

The referee further finds that, after making the fair and reasonable deductions, the sum of at least $50,000 is in the hands and in the possession of and under the control of the said Shelleys, or either of them, and is the property of the bankrupt estate, and concludes as a matter of law that the trustee in said bankrupt estate is entitled to an order directing the said Shelleys to turn over to the trustee the said sum of $50,000, and made an order accordingly on said 24th day of February, 1925. On the 9th day of April, 1925, the trustee filed an affidavit stating that neither George Shelley nor either of his sons had turned over the said sum of $50,000, or any part thereof. On the 14th day of April, 1925, the referee certified to the court his finding that the said Shelleys were then in contempt of court for failure to comply with the order to turn over, and requesting that they be punished for such contempt.

The court on the same day issued a citation ordering the said Shelleys to appear and show cause, at a term of this court held at San Diego, Cal., on the 18th day of May, 1925, why they and each of them should not be adjudged guilty of contempt. Each of the said Shelleys filed a separate answer on the 25th day of May, 1925, identical in form, reciting that he has not and never had in his possession or under his control any sum of money belonging to the bankrupt estate, and that he has not in his possession or under his control any part of the stock of goods of the bankrupt estate; that he has not in his possession the sum of $50,000, or any other sum, and is totally unable to comply with the order of the referee. This issue was tried before the court without a jury on the 25th day of May, 1925. Nothing substantial developed at the hearing. The testimony of the Shelleys and each of them was merely a repetition of the answer which each had filed.

It appears from the record that neither the bankrupt, George Shelley, nor either of his sons, took any steps to review the order of the referee of February 24, 1925. Nowhere in the subsequent proceedings do they attempt to do anything, except to say that they have not the money now, or the property, and that they never had it. Their counsel argues in an elaborate and capable brief that the court may not proceed in contempt against them without first trying the issues determined by the referee de novo. The attorney for the trustee in two briefs takes the position that the order of the referee, not having been reviewed, is a final judgment, and that this court cannot review the facts upon which the order is based under contempt proceedings.

The cases cited by counsel indicate that the courts are not wholly in harmony on the general propositions here involved. Most of them deal with a radically different set of facts. The Bankruptcy Act, in section 2 (Comp. St. § 9586) and other sections, provides for a review of the orders of the referee. General Order No. 27, and rule 84 of this court specifically set out the steps to be taken for the purpose of reviewing the acts of the referee. No such review having been taken in this case, it must be assumed that the finding of the referee and the order that the bankrupt and his sons turn over to the trustee the sum of $50,000 was well founded. If that order is not now reviewable by this court, then the only thing to be tried on this proceeding is the question of the disposition of this money by the bankrupt and his sons, since the time of the order made by the referee. At the hearing there was no effort or attempt on the part of the persons charged to do this. Their position simply was that they never received the money in question and are now not in possession of it. The assertion of present inability to turn over, without further explanation, apparently does not furnish any evidence of what has become of it.

Without passing upon the power of the court to try the facts de novo, under the record before me, I am of the opinion that good practice, proper procedure, and the weight of judicial opinion do not call for such review in this case. In re Frankel (D. C.) 184 F. 539; Power v. Fuhrman, 220 F. 787, 136 C. C. A. 393. It follows necessarily that the said George Shelley, Ben Shelley, and Abe Shelley, and each of them, is now in contempt of this court, and that a committal must issue. The warrant will be stayed for 10 days, in order that the bankrupt and his sons, or either of them, if they so wish, may forthwith take an appeal to the Circuit Court of Appeals. I am persuaded to

do this in view of the fact that in this (the Ninth) circuit there is no authoritative decision definitely settling the precise issues here involved.