### In re TABAK et al.

District Court, E. D. Pennsylvania.
September 28, 1925.

Reargument Denied April 26, 1928.

No. 8073.

Harry Shapiro, of Philadelphia, Pa., for bankrupt.

Bertram K. Wolfe and Aarons, Weinstein & Goldman, all of Philadelphia, Pa., for trustee.

DICKINSON, District Judge. The bankrupts in this case are the two individual members of a firm and the partnership. The order of the referee under review is one in effect that the individual bankrupts deliver up to the trustee assets belonging to the firm which had been withheld from him. The referee has followed the usual mode of dealing with the subject, for following which there are well established precedents. A starting point is

210

found in an inventory of merchandise stock on hand at a given date. This is expressed in terms of money either at cost price or at an inventory price. This gives a new starting point in a sum of money. To this is added other sums of money which represent the cost price of fresh merchandise bought after inventory taken. Whatever sales have been made are brought into the account ·by adding profits or subtracting losses, as the case may be, and a further usually liberal deduction is made for all expenditures. In this way a balance is struck. As a matter of accounting, this method is not open to criticism and presents no difficulties. As the basis, however, for an order upon an individual to surrender up property, the results of the accounting lack definiteness both in respect to the person who must obey the order and what property he is to give up. The real finding from the accounting is that the firm should have been in the possession of assets consisting of money and merchandise described and expressed in terms of money. As neither the money nor any merchandise came to the trustee and its whereabouts are unknown, the inference is drawn that it is being concealed and withheld.

As an answer to the petition for a discharge, the fact findings made are sufficient and satisfying. As a basis, however, for an order of commitment for contempt, they present this difficulty: The bankrupt asks to be relieved because he does not have the property which he has been commanded to surrender. The view must be taken either that he is concluded by the finding of the referee, or there must be a second inquiry into what he had. It is better that this inquiry when first made be made once and for all. Of course, it is true that the findings upon the first inquiry and the second differ. The first relates to one date and the second to another. The question on an application for relief is not whether the property ought to be at hand or at the time of bankruptcy was on hand, but whether at the time of application for relief was at hand. This distinction is clear enough, but the reason given for not delivering up the property is that the bankrupt does not have it, and he does not then have it because he never did have it. This is the very fact which has already been found as the basis for the order. ·

The situation presented then is that above mentioned. It must either be held that the bankrupt is concluded by the finding made or the inquiry originally made must be repeated. Neither course is wholly satisfactory. If in addition to the accounting fact result found the referee makes the further finding of the specific property, money, merchandise, or whatever it is · which is being withheld and who is withholding it, all subsequent inquiry may be restricted to what has become of the property since the order was made. The additional fact finding suggested has a bearing upon the order to be made. It is futile to order that a person give up possession of that which he does not have, and it is more satisfactory to make the inquiry before the order is made than to make the same· inquiry into the reason given for not obeying the order.

The cause is referred back to the referee for the purpose of making the additional· finding of what property is being concealed and whether both or which one of the individual bankrupts have control of it, so that a definite order may be made and its enforcement facilitated.

### Sur Motion for Reargument.

This motion was granted at the instance of several members of the bankruptcy bar who felt concerned, not with the cases, but with what they thought to be a departure from the established practice. Nothing was further from our thought than to introduce any change in established principles. All we had in mind was to relieve the court of an illogical situation by bringing the practice into accord with principles of law and logic.

We will treat of a typical case, both as it is and as it should be, in general terms.

■ 1. It is perfectly in accord with established principles of substantive law and sound practice to treat every bankrupt in respect to his former assets of which he keeps possession as a trustee for his creditors, and, as his retention of them is tortious, to call upon him in effect to account as a trustee ex maleficio. Such an account may be stated against him, as it is commonly stated, in terms of money, no matter what the form of the property or assets which is the basis of the debit items in such account may be. No departure from the present practice in this respect is suggested. The balance struck on such an accounting is no more than a finding that the bankrupt should have and should account for the found balance sum in money.

■ 2. When, however, the objective of the proceeding is an order to deliver to the

trustee in bankruptcy specific property in his possession or under his control, then the finding should be what this property or asset is, followed by an order to surrender it to the Trustee. The two proceedings are as different in purpose and in their nature as the difference between an action in ejectment and one in trespass or assumpsit. When it comes to a description of the thing which the bankrupt is withholding, we are within the realms of mere nomenclature. It is, whatever it is found to be, described as best it may be described. It may be a roan mare or a horse, a given number of pairs of shoes of certain sizes or manufacture or of value, or it may be a stock of merchandise described as accurately as may be, or it may be actual money. The essential finding is that the bankrupt has some specific thing which he should give up to his creditors.

3. The difference between the two things we have attempted to contrast is just here. A defaulting trustee is none the less a defaulter whether he has squandered the trust funds or has salted them down somewheres and is withholding them and is as much liable to an accounting in the one case as in the other. When, however, we come to deal with him in a contempt proceeding, the cases differ almost toto coelo. In the one case he does not comply with the order because he cannot; in the other he is simply contumacious. There is often a similar difference among bankrupts. The time of the finding when he has the property is often of great importance as well as the finding that he in fact has it. We may take typical cases for illustrative purposes. One is the man who, finding himself in failing circumstances, for the purpose of bolstering up his credit puts out a statement showing stock on hand to an inventoried sum which when bankruptcy proceedings intervene cannot be found. He cannot complain if, on an accounting basis, he is taken at his word that he had such stock on hand, but the real offense of which he is guilty is not concealing property, but of having lied to his creditors. Another is of the man who, before or after petition filed, turns over his property to a favored creditor or to a supposed friend, who double-crosses him. He deserves to have a finding made against him, but none the less he is powerless to comply with an order to disgorge. The third type is of the one who has the property in hand or under his control at the time the order is made, and who can comply with the order if he will.

4. We have said these cases differ. Historical and imaginative literature are both filled with lessons of the uselessness and cruelty of attempting to force a man to do what he is unable to do. No one would expend much sympathy with the man whose greed alone is in the way of his compliance with an order. At some time or other this differentiation must be made. There are three practicable ways of making it. The mere accounting finding is a relatively easy one to make. This will not, however, base a contempt proceeding. To found this there must be some specific thing which the bankrupt is to do which he can do if willing. When the motion to commit for contempt is made, this may be sent to the referee for the required finding. Such a course would be productive of delays. Another course would be to refer the finding of fact to a jury. The third and only remaining course is to have the referee, if contempt proceedings are contemplated, return with his findings a finding of the specific property withheld and by whom. The court may then act upon the motion to commit when it is made. This is the finding which we wish the referee to definitely make or not make.

The motion for a reargument is formally denied.