## In re SHEINMAN.

District Court, E. D. Pennsylvania.
November 1, 1928.

Decree affirmed in 33 F.(2d) 902.

Harry Shapiro and Samuel J. Gottesfeld, both of Philadelphia, Pa., for bankrupt.

KIRKPATRICK, District Judge. This certificate for review questions the correctness of an order made by the referee requiring the bankrupt to turn over to his trustee cash to the amount of $32,751.17 and merchandise of the kind usually carried by the bankrupt to the total value of $34,447.64. The record is voluminous, and the referee's analysis of the testimony contained in his general findings of fact is so clear and satisfactory that any extensive review of the testimony in this opinion would be superfluous.

As to $23,251.17 of the cash item no question is raised by the bankrupt. He challenges, however, the findings of the referee as to two items totaling $9,500. As to the first of these items, $4,500 turned over by the bankrupt to his wife on April 22, 1922, at the time of a mortgage settlement, the referee has found from the testimony of the wife, particularly referring to page 984 of the notes of testimony, that this money was returned by her to her husband and that he had it in his possession at the time the petition was filed. Taken as a whole, the testimony of the wife is contradictory and confusing, but there is competent evidence to support the referee's finding and it will not be disturbed.

The other item ($5,000 paid to M. Weiss in installments ostensibly as repayment of a loan) is more doubtful, but on the whole I think that the referee's findings should be sustained. If the evidence of the secretary and treasurer of the Tradesman's Commercial Company be considered, it becomes apparent that what seemed to be a loan to the bankrupt from M. Weiss was in reality simply a payment to him of his own money. It follows that the repayment of this money to M. Weiss taken in connection with all the circumstances and the testimony of both M. Weiss and the bankrupt sufficiently establish a fraudulent scheme between the bankrupt and his brother to place this money temporarily beyond the reach of the creditors, by arranging that M. Weiss should hold it for

the period during which there was danger of its being reached by the trustee. The inference necessarily follows that M. Weiss is not holding adversely to the bankrupt. If there is evidence from which it can be found that the money was placed in M. Weiss's hands temporarily for the special purpose of concealment only and subject to be recalled by the bankrupt when needed, then, although technically out of the bankrupt's possession, it is not beyond his control and a turnover order directed to the bankrupt is within the power of the referee to make. If, upon contempt proceedings, the bankrupt should show that his brother refused to respond to his call for the money and actually holds it adversely, that may be a good defense, but under the circumstances the fact that the money may not be physically in the bankrupt's possession is not ground for refusing to make the order. The foregoing considerations also would apply to the case of the money held by the wife but as to that item there was evidence upon which a finding could be based that the money had been returned by her to the bankrupt.

In regard to the merchandise item, the shortage here was established by taking an inventory at cost as a starting point, adding to it all purchases thereafter made up to the filing of the petition, substracting from the resultant sum all sales made during the same period (bringing the same in line with cost value by profit or loss adjustment), and then comparing what ought to have been on hand at the time of filing the petition, as so ascertained, with what actually was on hand. In performing this calculation, the referee gave the bankrupt the benefit of all that his books showed or that he claimed, adopting the method of the bankrupt's own expert accountant and accepting all of his conclusions at their full face value, with the exception of one point. The bankrupt's accountant arrived at the inventory which he used as a starting point by taking the inventory shown in the bankrupt's income tax return as of December 31, 1921, and working back from that by means of the bankrupt's books to a hypothetical, but, as he claimed, correct, inventory for December 1, 1921. The referee, on the other hand, took a financial statement given by the bankrupt to the Corn Exchange National Bank, one of his creditors showing his merchandise inventory as of November 30, 1921. The correct method of arriving at a December 1st inventory is the whole point at issue between the bankrupt and the trustee. There were only two ways of doing it presented to the referee. He had

to accept either one or the other, and there is no reason to hold that he was not justified in taking the bankrupt's financial statement as correct. The situation was quite different from that presented to the court in In re Lesser (C. C. A.) 114 F. 83, as will be seen upon a comparison of the bankrupt's testimony in the two cases.

Both the bankrupt's accountant and the trustee's accountant dealt throughout with cost figures, and if the referee's order be read as it is clearly intended to be, namely, that the value of the merchandise to be turned over is to be taken as cost value, there can be no criticism of the findings or the result arrived at. Of course, so far as subsequent proceedings with regard to the merchandise item may be concerned, counsel will bear in mind the distinction drawn by Judge Dickinson in Re Tabak, 34 F.(2d) 209, Cause No. 8073, Eastern District of Pennsylvania (not yet reported), between a turnover order to be considered as an accounting order merely, and only useful for the purpose of resisting a discharge, and an order to turn over specified and itemized property.

The order of the referee is affirmed.