### In re MILLER & HARBAUGH.

### HARBAUGH v. CLARK.

#### No. 6433.

Circuit Court of Appeals, Ninth Circuit.
Dec. 14, 1931.

For former opinion, see 53 F.(2d) 176.

Barnett H. Goldstein, H. E. Collier, and S. J. Bischoff, all of Portland, Or., for appellant.

Coan & Rosenberg, of Portland, Or., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and WEBSTER, District Judge.

WILBUR, Circuit Judge.

In petition for rehearing, counsel makes the following statement: "If the opinion in this case is to stand, it will become an impossibility to obtain merchandise withheld by a bankrupt on a turn over order. It will prevent criminal prosecution for concealing merchandise from a trustee by a bankrupt. In practically all of the cases where such proceedings were instituted the manner of determining the wrongful withholding of the merchandise from the trustee was based upon the same procedure as was resorted to in this case. Enumeration of 'the specific articles of personal property it was the duty of the bankrupt to turn over' is impossible. The force of this decision is to nullify and destroy the most effective measure for enforcing the Bankruptcy Act (11 USCA). In addition, it overrules the established procedure in effect in the Circuit Court of Appeals as well as the United States Supreme Court and is in conflict with the decisions of said courts on the same matter. It is further in conflict with applicable decisions of this court. It would produce an open wedge by judicial decision for unscrupulous and dishonest bankrupts to defraud their creditors under the protection of the Bankruptcy Act."

We have no doubt that this statement is made in good faith, but no such claims were advanced in the briefs.

It was contended by the appellant in his brief that: "The turnover orders and order to punish for contempt are invalid because they do not sufficiently describe the property to be turned over with reasonable certainty in order to insure its identity"—citing in support of this proposition Samel v. Dodd (C. C. A.) 142 F. 68; In re Elias (D. C.) 240 F. 448.

They again stated their proposition as follows: "We submit that this description is insufficient to identify the particular property required to be turned over, and the particular property which, it must be found, was in the possession of the appellant when the order committing him for contempt was made."

The brief of the appellee, in reply, contains the following: "Where the property sought to be recovered is described sufficiently to enable the person proceeded against to be apprised as to the kind of property required to be turned over such description is sufficient. In the Matter of Tabak (D. C. E. D. Pa. 1925) 34 F.(2d) 209, 14 A. B. R. (N. S.) 515, 518."

Appellee also says with reference to this point:

"In appellant's sixth point it is his contention that the order adjudging appellant in contempt of court does not sufficiently describe the property to be turned over with reasonable certainty in order to insure its identity.

"This point is likewise raised for the first time in the appellant's brief and is not covered by any assignment of error.

"The property is described in the order of the District Court and in the order to punish for contempt as follows:

" 'Merchandise consisting of jewelry used by the bankrupt in connection with its business as a retail jeweler on the premises located in the Buyers Building, Third and Alder Streets, Portland, Oregon, of the cost value to the bankrupt in the sum of $6,933.32 belonging to the bankrupt's estate in bankruptcy.'

"In the Matter of Tabak et al. (D. C. E. D. Pa. 1925) 34 F.(2d) 209, 211, 14 A. B. R. (N. S.) 515, 518, in considering the question of the description of property on a turnover order, the Court held:

" 'When it comes to a description of the thing which the bankrupt is withholding, we are within the realms of mere nomenclature. It is, whatever it is found to be, described as best it may be described. It may be a roan mare or a horse, a given number of pairs of shoes of certain sizes or manufacture or of value, or it may be a stock of merchandise described as may be, or it may be actual money. The essential finding is that the bankrupt has *some specific thing* which he should give up to his creditors.' (Italics ours.)

"It is submitted that the above description of the property sought to be recovered complies with the rule laid down in the foregoing case as well as the rule contended for by the cases cited in appellant's brief under this point."

The decision In the Matter of Tabak (D. C.) 34 F.(2d) 209, 210, cited by the appellee in his brief in support of the order of the trial court, was reconsidered by that court upon a motion "granted at the instance of several members of the bankruptcy bar who felt concerned, not with the cases, but with what they thought to be a departure from the established practice." In reply to this suggestion the court stated: "The mere accounting finding is a relatively easy one to make. This will not, however, base a contempt proceeding. To found this there must be some specific thing which the bankrupt is to do which he can do if willing. * * * The third and only remaining course is to have the referee, *if contempt proceedings are contemplated, return with his findings a finding of the specific property withheld and by whom.* The court may then act upon the motion to commit when it is made. This is the finding which we wish the referee to definitely make or not make." (Italics ours.)

These were the only cases cited in the briefs and the only argument on this point, and they all support the conclusion we reached.

Upon petition for rehearing, however, counsel calls our attention to a number of cases which he claims support his contention that the order here in question was sufficiently definite.

In the case of Reardon v. Pensoneau, 18 F.(2d) 244, 245, the Circuit Court of Appeals of the Eighth Circuit had under consideration a situation similar to that presented by the record here. In that case, however, the order directed that he turn over money. The court said: "The referee after a full review of the testimony found that bankrupt then had in his possession and under his control $6,900 and entered an order that he turn that sum over to the trustee as assets of the bankrupt estate."

In the case of Clark v. Milens, 28 F.(2d) 457, this court had under consideration a sim-

ilar situation, but in that case the referee ordered the payment of the money value of the deficiency in merchandise. The court said: "After a hearing in which she participated and which was in all respects regular, the referee on July 22, 1927, entered an order requiring her to pay over to the trustee $5,-377.37."

In Re Weber Co., 200 F. 404, the Circuit Court of Appeals of the Second Circuit considered an order directing the bankrupt to pay over the sum of $10,000 to the trustee within five days. The order was sustained. It was apparently based upon the disappearance of merchandise from the stock of the bankrupt.

The District Court of the Southern District of California in Re Shelley, 8 F.(2d) 878, 879, had under consideration an alleged contempt of a turnover order made under circumstances similar to that in the case at bar. The order, however, directed the bankrupts "to turn over to the trustee the said sum of $50,000."

In the case of Dittmar v. Michelson, 281 F. 116, decided by the Circuit Court of Appeals of the Third Circuit, dealt with a turnover order directing the payment of money.

In Re Magen Co., Inc., 10 F.(2d) 91 (C. C. A. 2), the trustee petitioned that the bankrupt be ordered "to turn over and deliver to the trustee 'merchandise, consisting of yarn, of the value of $106,531.66.'" The referee made an order that Herbert Magen turn over and deliver to the trustee "the said silk and cotton yarn of the value of $32,779.74, or, at the option of the respondent, in lieu of the said merchandise, to pay' to the said trustee, within the said period of five days, the sum of $32,779.74 in cash." This order was affirmed by the District Court [3 F.(2d) 33]. The Circuit Court of Appeals treated it as one for the turning over of silk and cotton yarn of the value of $32,779.74. Apparently no question was raised upon the hearing as to the sufficiency of the description of the merchandise.

In Re Levy & Co. (C. C. A.) 142 F. 442, 443, the turnover order required the petitioner to deliver "said goods or to pay over said sum of $12,921.87." He was adjudged guilty of contempt for failure to comply with this order. The question of the sufficiency of the description of goods was not raised. The court stated that: "The substantial question herein is raised by the assignment of error, on the ground that the evidence does not justify the finding that the bankrupt petitioner had said property or its proceeds in his hands."

It is assumed in the opinion that the order sufficiently described the merchandise to be turned over.

In the case of Samel v. Dodd (C. C. A.) 142 F. 68, 71, cited by us in the opinion, it is stated:

"But the present proceeding is one of a summary nature, and is invoked for the purpose of bringing within the reach and control of the bankruptcy court specific property found to be in the possession of the bankrupt and by him unlawfully withheld. *The order should describe the property with reasonable certainty in order to assure its identity,* and the command of the court to the bankrupt should be to surrender *the very property sought to be recovered.* In such cases the order to deliver should be based upon clear and convincing proof that the party charged has possession and control of the property, since the penalty of disobedience is imprisonment for contempt. * * *

"But it is not within the power of the court, in such a proceeding, to render judgment for the value of property ascertained to be in the possession of, and contumaciously withheld by, a bankrupt, and attach him for contempt upon his refusal to pay. Such procedure would approach dangerously near the line, if it did not overstep it, of imprisonment for debt." (Italics ours.)

In the concurring opinion of Judge Shelby in that case, he states: "To imprison one for not doing what he cannot do is inconsistent with the principles of individual liberty. There is no statute or law which confers such authority. Imprisonment under such circumstances for failure to pay money may force the friends of the prisoner to raise and pay the required sum, but such imprisonment is unwarranted by law in a jurisdiction where imprisonment for debt is forbidden. Where the prisoner has the power to comply with the order, having the money or thing in question in his possession, he may, of course, be punished for his failure to surrender it, without conflict with any rule of law against imprisonment for debt. Mueller v. Nugent, 184 U. S. 1, 22 S. Ct. 269, 46 L. Ed. 405."

In the Matter of Cohan, 41 F.(2d) 632, the Circuit Court of Appeals for the Third Circuit sustained the turnover order directing the bankrupt to turn over to the trustee "goods or merchandise consisting of shoes, overshoes, boots, sox, hose and other footwear to the value of $52,397.61, or the pro-

ceeds thereof, which came into his possession between January 1, 1928 and January 5, 1929 and which he had in his possession or under his control January 5, 1929—the date he filed his petition. * * *

"The main dispute in law arises on the bankrupt's assignment of error that the order is invalid because made in the alternative that he turn over goods or the proceeds of their sale."

On this subject the court said: "When concealment has been established in one way or another the law authorizes an order commanding the turnover *of the precise goods concealed or their concealed proceeds,* which is what the referee did in this case on facts about the existence of which, as distinguished from the inferences to be drawn from them, there is little dispute."

The order was affirmed, the court evidently being of the view that the goods had been sold, and "that the proceeds, amounting to at least the figure of the order, were concealed."

In Re Elias, 240 F. 448, 460, District Judge Connor, for the Eastern District of North Carolina, said: "While I can well understand the difficulty which the intelligent referee found in reaching the conclusion *that the bankrupt had the specific goods in his possession,* I am of the opinion that an order based upon an alternative finding cannot be made the basis of an order of commitment for contempt."

The Circuit Court of Appeals in the Second Circuit in Re Oriel, 23 F.(2d) 409, had under consideration an order punishing a bankrupt for failing to comply with an order directing him to turn over his account books. The principal question considered by the court was as to whether or not the bankrupt could purge himself of contempt by showing that he did not have the books at the time the order was made. The court correctly held, as the Supreme Court subsequently decided, Oriel v. Russell, Trustee, 278 U. S. 358, 49 S. Ct. 173, 73 L. Ed. 419, that the order could not thus be brought into the question.

In Lesaius v. Goodman (C. C. A.) 165 F. 889, 890, the order of the District Court (163 F. 614) directing the bankrupt to deliver "gentlemen's furnishings and clothing to the extent and of the value of $4,000" was reversed, but upon the ground that the pleading did not justify the order.

In Re Jackier (D. C.) 179 F. 720, 721, Judge John B. McPherson of the middle district of Pennsylvania, in reference to an application for an order to compel Adolph Leventhal, a third person, to deliver to the trustee goods alleged to belong to the bankrupt, stated: "It is clear that such an order should not be made, *unless the goods can be followed and sufficiently identified to enable the marshal to take them into his possession.* The evidence in the present case does not go far enough to meet these requirements, and for this reason the petition must fail. * * * Upon the evidence laid before me no order could possibly be framed that would point out to the marshal what goods he should seize, and I mean by that, not only what indubitable goods of the bankrupt he should seize, but also what goods of the same kind as the bankrupt's. In other words, the evidence does not enable the court to decide that the respondent has in his possession, for example, 50 suits of clothing belonging to the bankrupt, whether 50 specified suits can be pointed out or not. At the best, the evidence may point to the conclusion that somehow (in a manner not specified) and somewhere (at a place not specified) the respondent received from the bankrupt some clothing and other articles (in amounts not specified), and continues to hold them improperly." (Italics ours.)

This court, in Re Jacobs, 235 F. 706, 707, had before it an order similar to the one involved in the case at bar. It appears from the opinion, but more clearly from the transcript in that case, that the description of the goods ordered turned over was no more certain than the description in the case at bar. The question of the sufficiency of the description of the goods, either to justify the order itself or a contempt proceeding for failure to comply therewith, was apparently not raised and not considered. The principal point raised in that case, as stated by the court, is that "the court erred in finding that the bankrupts had a present possession and a present ability to surrender and deliver to the trustee"; that the question of the sufficiency of the description was not presented is clear from the briefs filed in that case, and an examination of the transcript shows that, although the trial judge, in his memorandum opinion, held that the evidence showed that the bankrupt had sold the goods and had in his possession the proceeds therefrom, the formal order thereafter signed by the judge directed the bankrupt to turn over the goods.

In Hirsch v. Schilling, 28 F.(2d) 171, 172, the Circuit Court of Appeals for the Third Circuit had under consideration a turnover order directing the bankrupt to turn over "the sum of $10,000 for merchandise and property belonging to this estate and found to be in his

possession and under his control and concealed by him." It was held that this was an order to pay over proceeds of merchandise, and as such was sustained by the evidence.

In Kirsner v. Taliaferro, 202 F. 51, 54, the Circuit Court of Appeals for the Fourth Circuit had under consideration a turnover order ordering the "bankrupt within 15 days to deliver to the trustee goods and merchandise of the character and class heretofore carried by him, being dry goods, notions and ladies ready made clothing to the value of $4,166.54." The District Judge had confirmed the foregoing order of the referee, and " * * * ordered that the bankrupt should pay the trustee the sum of $3,000 in cash, which the court fixed as the equivalent of the cash value of the goods which the order required the bankrupt to turn over." On July 17 he was ordered to show cause why he should not be committed for contempt. On that day he filed a petition for rehearing of the turnover order. On July 18 petitioner's rehearing was denied. The court found, as a matter of fact, "that the bankrupt had in his possession and control the goods described in the preceding order, that such goods lawfully belonged to the custody of the trustees, and that the bankrupt had present ability to comply with the order to turn them over to his trustees. He was thereupon committed to the custody of the marshal of the court to be by him held and confined in the city jail of Norfolk until he complied with the order to deliver the goods or their equivalent cash value as ascertained and declared by the court."

■■■ It was held in that case that the method of arriving at the goods on hand, substantially that used in the case at bar, was correct.

The only case we have found, none is cited, in which it is directly held in the face of an objection raising the question that the description of property such as contained in the order under consideration in the case at bar was sufficiently definite and certain to sustain a commitment for contempt, is the case of Kirsner v. Taliaferro, supra. It must be conceded that our decision is in direct conflict with the decision of the Circuit Court of Appeals of the Fourth Circuit. We call attention to this conflict in order that it may be considered by the Supreme Court. We cannot, however, subscribe to the principle of that case. It is well established by the cases hereinbefore cited, and by many others, that, where the bankrupt is shown to have been in possession of goods of a definite value, and he cannot account for those goods, and declares

that he does not have them, an order directing him to turn over as the proceeds derived therefrom a sum equivalent to the inventory value thereof is an appropriate order to be made under the circumstances. Such an order fixing a definite amount would be certain and capable of enforcement, but the order to turn over goods, wares, and merchandise of a definite value such as was carried in stock by the bankrupt is on its face incapable of enforcement, because it is impossible for any one to know when the bankrupt has complied with the order. Confessedly, the order is made in that form because of the inability of the referee, after hearing all the evidence to determine what property is concealed by the bankrupt. He therefore adopts a form of order which requires him to turn over merchandise of the value indicated by the deficiency of the bankrupt's assets. It is said that the bankrupt holds the key to the jail in which he is incarcerated for failing to conform to the order, because he alone knows exactly what he has concealed. The trouble with this simile is that the jailer has the custody of the lock and he has to determine whether or not the key fits the lock, or, to drop the simile, he is directed to imprison the bankrupt until he complies with the order. He has no method of determining more definitely than the referee has done in his order what goods were directed to be delivered, and, if the bankrupt should offer to surrender to him goods of the general character specified in the order and of the value specified in the order, the marshal would not know whether or not the goods tendered were the goods required by the order to be delivered. It is true that, if the bankrupt did in fact produce shoes or shirts in a sufficient quantity at wholesale prices to equal the amount specified in the order, the marshal might feel perfectly safe in accepting these goods as a compliance with the order, because he would know that no one in the world knew just what the order required, and therefore, if the monetary measure fixed in the order is covered by the value of goods tendered, there has been a substantial compliance with the order, or, to use the facts involved in the case at bar, if the bankrupt tendered to the marshal $7,000 worth of watches, or $7,000 worth of diamonds, the marshal would no doubt feel justified in releasing the bankrupt from custody. If, however, the jewelry actually concealed by the bankrupt consisted of gold earrings or emeralds, the marshal himself would be guilty of contempt in accepting this jewelry because he is directed to retain the prisoner until he produces the actual jewelry which was in the bankrupt's

custody on September 9. The rule with reference to the description of property is stated in 5 Remington on Bankruptcy, § 2423, p. 553, as follows: "The order for surrender must describe definitely the property to be surrendered." This is merely a statement of the cardinal rule that, when the court orders a party to civil litigation to do something, that something must be so clearly defined that he will know what it is he is required to do, and that he can be punished by imprisonment for not doing the thing ordered until he does do it.

We have thus far refrained from stating at length the facts in this particular case. We will briefly state them as follows:

█ The appellant, deciding to abandon the jewelry business, placed the jewelry belonging to the bankrupt corporation in a safe on the 9th of September. On the next day a receiver was placed in possession of the property and given the combination of the safe. It is asserted, and the referee finds, that at that time there was placed in the safe jewelry to the value of $6,900 more than was later found in the safe by the receiver. It was justly inferable that jewelry to this value had been abstracted from the safe overnight. It would seem, if there ever were a case in which the referee could state with reasonable definiteness the character of the property concealed or abstracted, this was such a case. The bankrupt, upon his hearing for contempt, offered affidavits to the effect that the jewelry was stolen. The court declined to hear this evidence upon the theory that the turnover order was conclusive upon the appellant as to his possession of the goods at the time of the bankruptcy. It must be conceded that the finding of the referee was justified by the evidence, and that it is binding upon the bankrupt in the contempt proceedings, so far as it establishes the fact that on September 9 this jewelry was in his possession. We refer to the following facts merely to illustrate the difficulties arising from the turnover order made by the referee in this case:

It appears that at the original hearing in the turnover proceedings the referee was under the impression and found as a fact that the appellant was the only one having the combination of the safe or access to its contents. The inference properly deducible therefrom was that, in the absence of damage to the safe, the appellant must have been the one who opened it and took out its contents. On the hearing of the contempt matter, the appellant offered affidavits to the effect that several others who were named had the combination of the safe; one of these named in the affidavits is now a fugitive from justice. He was employed by the appellant's landlord. The landlord had suggested to the appellant that the appellant turn over to him a portion of the bankrupt stock to be retained by him until the bankruptcy proceedings were terminated. This request was based upon the proposition that the landlord was obligated upon the notes of the bankrupt for a large amount. The landlord has stated to a number of persons that he alone has the information which would release the bankrupt from custody. We are not passing upon the truth of these allegations, but, to state it plainly, the appellant offered to show that the goods which he was accused of selling were in fact stolen by a third party without his knowledge and before the institution of the bankruptcy proceedings, and that he did not know of this theft until after the turnover order was entered in the case. We would be loath to hold that the turnover order would preclude a man's showing that the goods which he is charged with having concealed were actually in the possession of a third person who had abstracted them before the bankruptcy proceedings were instituted and before the turnover order was made, where it appears that the bankrupt was ignorant of this fact until after the turnover order was made. We do not suggest that the trial court would have found this evidence trustworthy, but his refusal to consider it assumes that it is true, and we are therefore confronted squarely with the proposition that the bankrupt cannot, after turnover order, prove that the goods he is directed to turn over were not in his custody at the time of the turnover order, even when he shows exactly where they are and who has their custody, and that he had no knowledge thereof at the time of the turnover order. We do not, however, base our decision upon that proposition. We adhere to the opinion heretofore rendered.

Rehearing denied.