## In re A. H. KAPLAN, Inc.
### No. 13749.

District Court, E. D. Pennsylvania.
March 24, 1933.

Martin Feldman, of Philadelphia, Pa., for trustee.

Hyman Shane, of Philadelphia, Pa., for bankrupt.

### KIRKPATRICK, District Judge.

In this case the evidence before the referee was wholly insufficient to support the finding on which the turnover order was based; namely, that the bankrupt was or had been at the time of the adjudication in possession of articles of women's wearing apparel of the cost of $23,439.62.

The finding was arrived at by the usual accounting method; an entirely proper procedure and sufficient to form the basis of an order, provided it is correctly applied. The testimony on which the finding was based was uncontradicted, the bankrupt having failed to offer any evidence, and, if a prima facie case had been established, I would have felt that the bankrupt's failure to offer evidence would be practically conclusive against him. However, unless there is a prima facie case, there is nothing which requires explanation, and the bankrupt's silence amounts to nothing. The trouble here is that the evidence wholly fails to make out a prima facie case.

The bankrupt was engaged in ladies wearing apparel business. His inventory taken at cost, on December 18, 1929, was $30,080.50. To this the referee added the sum of $115,065.18, being the total of purchases from the date of inventory to the bankruptcy, also taken at cost. This makes the total amount of merchandise to be accounted for by the bankrupt $145,145.68.

So far the procedure is entirely proper. But no one would suggest that a prima facie case was made out when these two items were proved, because it appears that the bankrupt was for several months actively engaged in business selling goods, and it is of course necessary to show what he sold and what he actually turned over to the trustee. Then if there is any shortage, he can be held for the balance.

From the figure of $145,145.68 the referee proceeded to subtract the sum of $101,706.06, which sum was supposed to show the quantity of goods which went out legitimately in the ordinary course of business. The figure, however, is not the cost of the goods sold but the money received for them, and therefore is not of the slightest assistance in determining what portion of the total merchandise charged at cost against the bankrupt was sold by him in the ordinary conduct of his business. So far as anything appears in this record, the goods for which the bankrupt received $101,706.06 might have been goods costing anything up to $145,145.68. The accounting procedure breaks down at this point for, even if there had been no goods whatever on hand at the time of the bankruptcy, there is nothing to show that the goods sold in the business did not make up the entire amount charged at cost against the bankrupt.

In re Sheinman (D. C.) 33 F.(2d) 901, 902, was cited by the trustee to support the order, but there was a vital element in the Sheinman Case not present here. The charge items there as here were on a cost basis, and the sales (as here) were obtained from actual cash receipts, but the figure of receipts from sales was corrected and practically transmuted into cost by making a profit and loss adjustment which was obtained from the bankrupt's own records.

The discussion might end here, because, however accurate the estimate of the quantity of goods on hand at the time of the bankruptcy, the balance would be worthless because of lack of comparable data as to sales. However, the figure arrived at for the goods on hand is just as unreliable.

The referee drew upon two sources to get this item of discharge (which he fixed at a minimum of $23,439.62). The first source was the bankrupt's schedules which showed the merchandise on hand as $20,000. Now, I would hesitate under any circumstances to hold that an estimate made in a bankrupt's schedules is a sufficient basis for a finding on which to predicate a turnover order. It certainly has not the same presumption of accuracy as a credit statement issued by the bankrupt or an income tax return, both of which have been used. However that may be, the greater difficulty here is that the $20,000 figure was not a cost figure, but was intended to represent the fair market value of the merchandise. In view of rapid depreciation, changing styles, and many other elements, it is far from unreasonable to surmise that a stock of ladies wearing apparel worth $20,000 today may have cost $43,000 or more a few months ago.

The other source which the referee used to ascertain the amount of goods on hand was the appraisement. This figure was $8,025, and that it was fairly accurate is shown by the fact that the receiver ob-

tained in the neighborhood of $7,500 for the stock.

Of course this was not a cost figure. There was, however, some attempt to bring it into line with cost by testimony that the appraisement was made at not more than 60 per cent. of cost; the bankrupt's manager having accompanied the appraisers and having advised them of the cost figures. The trouble is, however, that something like 15 or 20 per cent. (in quantity) of the merchandise was stored upon the fourth floor. And this was appraised as virtually worthless (practically 5 to 10 per cent.) by reason of its out of date character. This stock had been on hand a good while, and the trustee testified that he was unable to say whether or not "that made up a great portion of the stock which was turned over to the A. H. Kaplan Company, which was inventoried at cost prices." So far as he knew the original cost of this fourth floor stock might have been anything from $10,000 to $100,000. Obviously, the figures arrived at under these circumstances by the appraisers are of very little value or worthless to set off against charge items figured solely on a cost basis.

The evidence is plainly insufficient to establish a prima facie case.

The order of the referee is reversed.