**In re PARTRIDGE.**
No. 13697.

District Court, W. D. New York.
Feb. 14, 1935.

Leverne Thomas, of Prattsburg, N. Y., for Ernest S. Angliss, trustee in bankruptcy.

James O. Sebring, of Corning, N. Y., in pro. per.

RIPPEY, District Judge.

This is a proceeding to punish Mr. Sebring for contempt of court for failure to comply with an order of a former judge of this court. It becomes necessary to review the whole proceeding, so far as the records now before the court permit, to determine whether the proper practice has been followed, and whether there is a sound basis for an order if granted by this court at this time. The relator challenges, at the outset, the power of this court in the proceeding now before it to hold him in contempt.

Partridge was adjudicated bankrupt on October 17, 1928. His interest in personal property was sold November 24, 1928, and purchased by James O. Sebring for $724.15, for which the purchaser gave a memorandum in the form of a duebill to the trustee. On the same day, $362.20 was paid on the purchase price, leaving a balance due of $361.95. This money has never been paid over to the trustee. Mr. Sebring asserts that he has not made this payment because the referee has failed to fix his fees as attorney for the bankrupt, which fees constituted a lien against the amount due as proceeds of the sale of property upon which he had, at the time of the adjudication, a valid chattel mortgage for the sum of $250 as security. He also asserted, before Judge Adler, in a verified statement that he purchased the property for the sum stated, and "was asked to and did sign a due bill for the whole amount of the bill as follows:

" 'Due Ernest Angliss as sole trustee in bankruptcy of Spencer M. Partridge, bankrupt, the sum of Seven hundred twenty-four and fifteen one hundredths dollars, being the amount of the personal property purchased by me at the public sale of the bankrupt property held on November 24, 1928.

" 'Dated November 24, 1928.' "

Further, he asserts that: "It was also expressly agreed that the said balance, after deducting the said payment, was to be held in abeyance until it came to the final settlement, when there was to be deducted therefrom the entire amount that should be allowed to Sebring & King which would be amply sufficient to pay the said indebtedness."

Then there is no return by the referee before the court as to the transactions leading up to and upon this sale. Neither the referee nor the trustee had any authority to make any such deal. A sale of this kind must be made at public auction on terms fixed by the referee and must be for cash, and does not become binding until duly confirmed by order of the referee.

The trustee has, from the beginning, denied that Mr. Sebring's version of the transaction was correct. He has asserted and continues to assert that the sale was for cash. Mr. Sebring cannot now maintain that the sale was conditional or other than for cash, or that the proceedings were informal or technically irregular, as those questions were settled by the referee on August 31, 1932, and the referee's decision was approved by Judge Adler on March 27, 1933 (see infra).

Proceedings in civil contempt in matters relating to the administration of an estate must be laid before the referee. In the case at bar they cannot rest upon the failure of the relator to comply with the order of Judge Adler of March 27, 1933.

The practice to be followed in the matter of a civil contempt committed before the referee is clear. Section 41a of the Bankruptcy Act (11 USCA § 69 (a) relates to contempts before referees, and provides, among other things, that: "A person shall not, in proceedings before a referee, (1) disobey or resist any lawful order, process, or writ."

Subdivision b of this section (11 USCA § 69 (b) provides that, in case of disobedience thereof, the referee shall certify the facts to the judge who shall, thereupon, "in a summary manner, hear the evidence as to the acts complained of, and, if it is such as to warrant him in so doing, punish such person in the same manner and to the same extent as for a contempt committed before the court of bankruptcy, or commit such person upon the same conditions as if the doing of the forbidden act had occurred with reference to the process of, or in the presence of, the court."

█ This case is still in the hands of the referee. It is the duty of the referee to marshal the assets of the bankrupt, to supervise the conversion thereof into cash and distribute the proceeds to creditors, or others entitled thereto; to marshal liens and determine their extent, validity, and order of priority. In re Kellogg (C. C. A.) 121 F. 333. Here, the referee took control over the personal property of the bankrupt, apparently ordered it sold; it was sold to relator, and the relator has failed to pay the purchase price, in part, to the trustee. It was then the duty of the referee, upon due notice, to confirm the sale and to direct the purchaser to pay to the trustee the purchase money. In the event the purchaser failed to pay the amount within the time directed, the trustee might file a petition with the referee setting up the proceedings as had to the time of the order of confirmation, the order of confirmation, and direction to the purchaser to pay, proof of due service of a copy of the order, and failure of the purchaser to comply, and, upon such petition, the referee should issue an order to show cause why such order should not be complied with, hear the case, and report his proceedings to the court.

█ With proof in the case that relator has been ordered to pay a certain sum to the trustee, that he has been duly served with the order, and that he has failed to comply with it, a prima facie case has been made for an order punishing him for civil contempt (see In re Walter Guzzardi (C. C. A. 2d) 74 F.(2d) 671, Jan. 21, 1935), and casts the burden on him to furnish an explanation of his reasons for failure to obey the order. In re Stavrahn (C. C. A.) 174 F. 330, 20 Ann. Cas. 888.

From the records of the case, and the papers in the folder, it appears that the trustee undertook to secure payment of the amount due, but without success, and later procured an order to show cause why the money should not be paid. A hearing was had before the referee on August 23, 1932, at which time Mr. Sebring appeared and filed a copy of the chattel mortgage. It was dated October 16, 1928, and was not filed in the town clerk's office of the town of Partridge, which was the proper office for filing, or elsewhere, and the referee held the mortgage was void as against creditors of the bankrupt. Mr. Sebring did not file the required affidavit showing the extent and value of his services, nor did he give any testimony as to the same. The matter was adjourned for one week at Mr. Sebring's request. There being no further testimony taken, or appearance by claimant, the referee made an order on August 31, 1932, directing Mr. Sebring to pay the balance of the purchase money, with interest, forthwith to the trustee. Whether a formal order was ever served does not appear. A petition to review the referee's decision was filed and on March 27, 1933, the then District Judge, Simon L. Adler, made an order rejecting the claim of Mr. Sebring for services, allowing him $30, the amount of the filing fee which he had advanced, declaring the note and chattel mortgage for $250 void, and directing payment to the trustee of the sum of $361.95, with interest from November 23, 1928.

As above indicated, the referee acted in accordance with law in making the order of August 31, 1932, or at least that order cannot be questioned by relator. The relator came in and asserted his claim, without objection to the regularity of the proceedings, and submitted himself and the subject-matter of his claim to the court, and the questions of the validity of his chattel mortgage, whether the mortgage constituted a valid lien on the property in question, and whether he had any right to withhold payment of the purchase money were finally determined. Whether the decision was right or wrong is not for this court at this or any future time to consider. In re Lans (C. C. A.) 158 F. 610; In re Shelley (D. C.) 8 F.(2d) 878. The decision of

808

Judge Adler was final and is final, and it cannot be reviewed here or in any other court, as below indicated. The legal effect of Judge Adler's decision was to affirm the decision of the referee, and proceedings thereafter were to be had by the referee to carry his original decision into effect.

From the record it also appears that Mr. Sebring, on September 5, 1933, filed a petition for a further review of the matter, and Judge Adler again confirmed the report and order of the referee. A notice was served by the trustee demanding payment of the money in accordance with the terms of the order, but evidently the referee took no steps to compel Mr. Sebring to comply.

Mr. Sebring comes before the court now in response to the order to show cause, and asks for a rehearing of the matter already settled by Judge Adler, as above indicated. That this cannot be done at this late date is manifest. The relator should have appealed to the Circuit Court of Appeals, if dissatisfied, under section 24b of the Bankruptcy Act, as amended (11 USCA § 47 (b), Remington, § 3772; Taylor v. Voss, 271 U. S. 176, 181, 46 S. Ct. 461, 70 L. Ed. 889; Calhoun v. Stratton (C. C. A.) 61 F.(2d) 302; and his time to appeal expired on April 27, 1933. Rule XXXVI, Circuit Court of Appeals, Second Circuit; In re Weinstock (C. C. A.) 56 F.(2d) 829; The Torgovnick (C. C. A.) 49 F.(2d) 211. Failure to appeal within thirty days after entry of the order of the District Judge was fatal to any further proceedings on the part of the relator. Broders v. Lage (C. C. A.) 25 F.(2d) 288; Clements v. Conyers (C. C. A.) 31 F.(2d) 563. The right to appeal from an order confirming a report or order of the referee in bankruptcy, if once lost, cannot be renewed by petition for a rehearing. Foster v. McMasters (C. C. A.) 15 F.(2d) 751; Conboy v. First Nat. Bank of J. C., 203 U. S. 141, 27 S. Ct. 50, 51 L. Ed. 128.

The order of Judge Adler of September 25, 1933, was in the nature of a denial of a rehearing. No appeal lies from orders denying petitions for rehearing which are addressed to the discretion of the court and are designed to offer the court an opportunity to correct its own errors. Foster v. McMasters, supra; Conboy v. First Nat. Bank of Jersey City, supra.

As a reply to the petition to punish for contempt, Mr. Sebring filed his verified statement with the court on December 21, 1934. Mr. Sebring's statement sets up and reviews the identical matters settled by the referee and by Judge Adler, and furnishes no answer to the petition to punish for contempt. The duty to pay the purchase price for the property exists without reference to the matter of the allowance for services, and is absolute. Any allowance for services, if made at any time, does not lessen the relator's duty to pay for the property which he purchased, and could not act as a set-off against this sum.

On February 20, 1933, Judge Adler pointed out to the referee that the matter of the chattel mortgage and allied questions should be dealt with separately from the question of allowance to Mr. Sebring for legal services, and that the latter question can be determined at any time before the estate is closed.

The motion to punish for contempt is denied, without prejudice to such further proceeding before the referee to enforce his order of August 31, 1932, as he and the trustee may be advised. Any such proceeding now is entirely distinct from any proceeding to fix Mr. Sebring's allowance for legal services. Prior to March 1, 1935, the referee is directed to formally order Mr. Sebring to file any claim he may have for legal services with supporting affidavits or to present proof on a day certain as to the rendition and value thereof, and to proceed at once to determine what amount is properly allowable therefor, and to do whatever may be necessary, in that respect or otherwise, to close this estate. So ordered.