**In re ZAPPALA et al.**

No. 20510.

District Court, E. D. Pennsylvania.
March 31, 1942.

Emil F. Goldhaber, of Philadelphia, for bankrupts.

Ned Stein, of Philadelphia, for trustee in bankruptcy.

MOORE, District Judge.

This case is here upon certificate for review of an order of the referee requiring the bankrupts to turn over to the trustee merchandise in the amount of $13,735.77, cost price, or its monetary value. It is one of those cases of which the books are full in which an "accounting" deficiency is established, which is sought to be made the basis for a turn-over order.

The testimony taken before the referee showed that on March 26, 1938, bankrupts made a financial statement that they had on hand $8,000 worth of merchandise, on which they owed $5,000. Their records showed that between March 26, 1938, and August 3, 1938 (the date of filing petition in bankruptcy), the bankrupts paid $14,-976.62 for merchandise bought, and that on the latter date they owed unpaid bills to merchandise creditors in the amount of $17,843.65. These figures indicated total merchandise acquired prior to August 3, 1938, in the amount of $35,820.27. As a credit against this amount, the records of the bankrupts showed cash receipts (at not less than cost) from March 26, 1938, to August 3, 1938, of $19,206.02. Accounts receivable were $249.55 less on the latter date than on the former, and losses of $550 were shown. The merchandise inventory on August 3, 1938, amounted to $2,577.93. By this account, the bankrupts were shown to be entitled to a total credit of $22,084.50, leaving $13,735.77 to be accounted for.

The referee did not find in his order requiring a turn-over that either merchandise or cash had been fraudulently concealed, but merely found "that the cost value of the merchandise to be accounted for by the bankrupts is $13,735.77."

It may well be doubted whether under the facts shown, and in the absence of a finding by the referee that the merchandise or the cash proceeds thereof were in the possession of the bankrupts or either of them, any valid turn-over order could be made. Jurisdiction exists in courts of bankruptcy summarily to require the bankrupt to pay over money or to surrender other property in his possession or under his control belonging to the estate, and, upon his failure or refusal so to do, to attach him for contempt. But the property or money must be found to be in the possession of the bankrupt as a condition precedent to the entry of a turn-over order against him; otherwise, the court may find itself in the position of ordering the bankrupt to do an act which it is not within his power to do. Samel et al. v. Dodd, 5 Cir., 142 F. 68; In re Goldman, 1 Cir., 1932, 62 F.2d 421. The latter case contains a full discussion of the powers of the bankruptcy court with reference to turn-

over orders and a citation of numerous cases which have construed such powers. The case of Sheinman v. Chalmers in this circuit, 33 F.2d 902, in which a turn-over was sustained, based upon an accounting deficiency, may at first glance be said to be at variance with the general rule as stated in the Goldman case. But an examination of the Sheinman case indicates that the appeal was taken, not at the stage when the bankrupt had been attached for contempt for failing to comply with the turn-over order; but it was an appeal from the District Court's affirmation of the turn-over order itself. However, since the only effective means of enforcing a turn-over order is by attachment for contempt, it would appear to be a vain effort on the part of the trustee to clear a road to the brink of a chasm which he can not bridge. I note that in Judge Kirkpatrick's opinion in the Sheinman case, as it came from the District Court, he says: "Of course, so far as subsequent proceedings with regard to the merchandise item may be concerned, counsel will bear in mind the distinction drawn by Judge Dickinson in Re Tabak [34 F.2d 209] Cause No. 8073, Eastern District of Pennsylvania (not yet reported), between a turnover order to be considered as an accounting order merely, and only useful for the purpose of resisting a discharge, and an order to turn over specified itemized property." In re Sheinman, D.C., 33 F.2d 901, 902.

In Re Tabak et al. was afterwards reported in 34 F.2d 209, 211. I quote from the language of Judge Dickinson in that case as follows: "The mere accounting finding is a relatively easy one to make. This will not, however, base a contempt proceeding. To found this there must be some specific thing which the bankrupt is to do which he can do if willing. When the motion to commit for contempt is made, this may be sent to the referee for the required finding. Such a course would be productive of delays. Another course would be to refer the finding of fact to a jury. The third and only remaining course is to have the referee, if contempt proceedings are contemplated, return with his findings a finding of the specific property withheld and by whom. The court may then act upon the motion to commit when it is made."

Counsel for the bankrupts does not assail the turn-over order because of the vices which I have pointed out. He confines his attack to the narrow ground that an order has been entered against two persons requiring them to turn over merchandise of a specified value or its money equivalent, without any finding as to how much merchandise or cash is in the possession of each of these persons. Under this order, he argues, if each of the bankrupts were assumed to have one-half the property or cash in his possession, he could not free himself from attachment for contempt by turning over the one-half part in his possession, because by the order he is required, jointly with his partner, to turn over all of it. The same reasoning would apply to any other fractional division of the property and cash as between the partners. The trustee counters by saying that to adopt the argument of the bankrupts, the court must ignore the fundamental principles of partnership law. I do not conceive that the principles of partnership law have any application to a case such as this, where human liberty is the ultimate stake. Granting that it may become impossible, on applying the principles here announced to partnership cases, to secure a turn-over order for deficiencies established by mere accounting methods, yet the ends of justice do not thereby fail of attainment. The bankruptcy law contains ample provisions whereby bankrupts may be punished for fraudulent acts or perjury; and the accounting deficiency, if unexplained, may be used as the basis for an order denying discharge to the bankrupts. Creditors stand to lose nothing by such a procedure; but even if it were otherwise, the Court could not, under the guise of helping creditors secure payment of their debts, permit the liberty of a bankrupt to be jeopardized upon vague, uncertain and indefinite charges of withholding undescribed and unspecified merchandise or cash.

I agree with the contention of the bankrupts that, as a prerequisite to a valid turn-over order against the two bankrupts, there must be a finding by the referee that each has in his possession certain specified merchandise or cash belonging to the estate; and the order must be directed against the individuals separately, and must specify what merchandise or cash each individual is required to turn over to the trustee. In re Tabak et al., supra.

For the foregoing reasons, the case must be referred back to the referee for the pur-

pose of making the additional finding of what property is being concealed, and whether both, or which one, of the individual bankrupts have control of it.

An order may be entered in accordance with the foregoing opinion.